UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------x

THE CITY OF NEW YORK,

        Plaintiff,

    -against-

FLEET GENERAL INSURANCE GROUP,
INC.,

        Defendant.
------------------------------------------------------x

**MEMORANDUM AND ORDER**
19-CV-6629 (RPK) (ST)

RACHEL P. KOVNER, United States District Judge:

This lawsuit presents the question whether an insurer has a duty to defend the City of New York ("the City") in a state-court lawsuit over millions of dollars in property damage that allegedly occurred when a section of Northern Boulevard in Queens collapsed during a construction project. Consistent with a City requirement, the general contractor on the Northern Boulevard construction project—the Perini Group, Inc. ("Perini")—obtained an insurance policy that covers the City as an additional insured "only with respect to liability for . . . 'property damage' . . . caused, in whole or in part, by [Perini's] acts or omissions."  Consolidated Edison Company of New York, Inc. ("Con Edison") has filed a complaint in state court seeking to recover millions of dollars for property damage that Con Edison allegedly suffered due to the collapse.  The lawsuit names the City and Perini as defendants, among others.

The City has now filed this federal lawsuit arguing that Perini's insurer, Fleet General Insurance Group, Inc. ("Fleet"), has a duty to defend the City in the *Con Edison* case.  Under New York law, an insurer has a duty to defend a litigant if a complaint raises "a reasonable possibility"

1

that the lawsuit will result in an award of damages against the litigant that is covered by the insurer's policy. *Maryland Cas. Co. v. Cont'l Cas. Co.*, 332 F.3d 145, 160 (2d Cir. 2003).

I conclude that the insurer does have a duty to defend the City in Con Edison's lawsuit. Like other courts that have examined similar policy language, I conclude that endorsement insuring the City for property damage "caused, in whole or in part, by" Perini's acts or omissions requires the insurer to cover the City for property damage proximately caused by Perini. And, fairly read, Con Edison's lawsuit does allege that the City is liable for such damage.

Even if the policy were narrower, the insurer would have a duty to defend the City in the *Con Edison* case. Both parties agree that, at minimum, the insurance policy here would protect the City against joint and several liability with Perini for Con Edison's damages. And the complaint raises at least a reasonable possibility that Perini and the City will be held jointly and severally liable. Accordingly, the City's motion for summary judgment is granted, and Fleet's motion for summary judgment is denied.

## BACKGROUND

The following background comes from the parties' joint statement of undisputed facts and attached exhibits. *See* Local Rule 56.1; Joint Statement of Undisputed Facts (Dkt. #20).

### A. Factual Background

#### 1. The Construction Project

In July 2014, the Fleet Financial Group, Inc. ("Fleet Financial"), a nonparty, allegedly sought to build "a multi-story, mixed-use building, featuring apartments, a hotel, retail [space,] and office space" on a "pie-shaped wedge of land . . . bordered by Northern Boulevard" in Queens. *See* Compl. ¶ 3, *Consol. Edison Co. of New York, Inc. v. E. Emerald Grp. LLC*, No. 715229/2019 (N.Y. Sup. Ct. filed Sept. 5, 2019) (Dkt. #20-1) ("*Con Edison* Compl."). Fleet Financial enlisted

Perini as a general contractor and the Racanelli Construction Group, Inc. ("Racanelli"), as a "contractor or subcontractor" to do the work. *See id.* ¶¶ 12-13, 32-33.

The following year, under Fleet Financial and Perini's "guidance, direction, and supervision," Racanelli allegedly "began excavation work." *Id.* ¶ 38. Racanelli soon started to receive "violations, penalties, and stop work orders" from the New York City Department of Buildings. *Id.* ¶ 40. For example, Racanelli allegedly received a violation in November 2015 "for failure to maintain building walls." *Id.* ¶ 43. This violation noted "at the time of the inspection" that "the sidewalk and curb" adjacent to the site had "shift[ed]." *Ibid.* Perini also received a permit to work on the Northern Boulevard site, *see* Joint Statement ¶ 7, and also received violations from the New York City Department of Buildings, *see Con Edison* Compl. ¶¶ 45-61. For example, Perini allegedly received a violation "for failure to provide protection at sides of an excavation." *Id.* ¶ 45. Perini also allegedly received a violation for "failure to monitor adjoining structures for movement." *Id.* ¶ 46.

By December 2018, a Con Edison employee had noticed "a street depression at Northern Boulevard at the location of the" construction site. *Id.* ¶ 55. Con Edison allegedly notified New York City's Department of Environmental Protection and Department of Transportation. *Id.* ¶ 56. Soon after, the New York City Department of Buildings allegedly received another complaint that the excavation "was causing cracks on the sidewalk and the street." *Id.* ¶ 59. In response, the Department of Buildings issued two more violations to Perini: "one for the failure to provide construction documents and another for the failure to protect public property." *Ibid.* The same day, the Department of Buildings issued an order "directing that all work on the [p]roject be stopped." *Id.* ¶ 60.

Con Edison alleges that around this time, one of New York City's "underground water mains or fire hydrant service lines at or near the [p]roject . . . leaked." *Id.* ¶ 137. The water allegedly "wash[ed] away the soil supporting the road and sidewalk adjacent to the [p]roject." *Ibid.* It also allegedly washed away soil supporting "the retaining wall on the [p]roject" and nearby "gas and electric facilities." *Ibid.*

Con Edison further alleges that in January 2019, the excavation work at the Northern Boulevard site "caus[ed] a 75 by 6 feet section of Northern Boulevard and a 75 by 5 feet section of sidewalk adjacent to the [site] to collapse" when the "excavation wall suffered a catastrophic failure." *Id.* ¶ 62. The collapse allegedly damaged "gas and electric facilities" adjacent to the site and caused "the loss of natural gas from Con Edison's gas transmission main." *Id.* ¶ 65. Con Edison allegedly "deployed an emergency response and performed necessary and reasonable repairs to its gas and electric facilities." *Id.* ¶ 66.

## 2. The *Con Edison* Action

In September 2019, Con Edison filed a property-damage action in the Supreme Court of the State of New York, Queens County. *See id* at 33. The defendants are Perini, Racanelli, Fleet Financial, the Eastern Emerald Group LLC, the Grand Eastern Mirage Group, LLC, and the City of New York. *Id.* ¶¶ 8-14. The complaint divides the defendants into two groups: (i) the "Construction Defendants"—all non-City defendants—and (ii) the City of New York. *Id.* ¶ 1.

The *Con Edison* complaint asserts six causes of action against the Construction Defendants: (1) strict liability under N.Y.C. Admin. Code § 28-701.2C33, *Con Edison* Compl. ¶¶ 68-74; (2) strict liability under the common law, *id.* ¶¶ 75-81; (3) negligence per se, *id.* ¶¶ 82-97; (4) failure to comply with N.Y. Comp. Codes R. & Regs. tit. 16, § 753, *Con Edison* Compl. ¶¶ 98-109; (5) negligence under the common law, *id.* ¶¶ 110-120; and (6) nuisance, *id.* ¶¶ 121-135.

On the third, fourth, and fifth causes of action, Con Edison alleges that the non-City defendants' "actions and omissions [were] the proximate cause" of their injuries. *Id.* ¶¶ 91, 108, 115.

On each of these six causes of action, Con Edison seeks a judgment against the non-City defendants of "at least $4.8 million." *Id.* at 31-32. It also alleges that these non-City defendants are liable "jointly and severally." *Id.* ¶¶ 74, 81, 97, 109, 120, 135.

The *Con Edison* complaint then asserts a seventh cause of action of common-law negligence against the City. *Id.* ¶¶ 136-153. This cause of action can be read to assert several theories of liability. First, the complaint alleges that the City negligently "inspect[ed] and monitor[ed] [the] construction, excavation, and development work being done throughout the City." *Id.* ¶ 140. Specifically, the City "fail[ed] to properly inspect, monitor, and/or stop the construction work being done on the [p]roject, including, but not limited to, work in violation of NYC's stop work orders, and allow[ed] that work to cause damage to Con Edison's gas and electric facilities." *Id.* ¶ 142. Second, the complaint alleges that the City negligently "operate[d] and maintain[ed] the water and sewer systems." *Id.* ¶ 139. Specifically, the City negligently "allow[ed] one of its underground water mains or fire hydrant service lines at or near the [p]roject to wash away the soil supporting the road, sidewalk, retaining wall and the gas and electric facilities." *Id.* ¶ 141. And it "fail[ed] to repair its underground facilities that it knew, or should have known, were failing and/or leaking." *Id.* ¶ 143. Third, the complaint alleges that the City negligently "fail[ed] to take proper and necessary actions to investigate, remediate, and repair the street depression reported by Con Edison on December 16, 2018." *Id.* ¶ 144. "This investigation, remediation, and repair would have revealed either the leak[s] . . . or the deficient construction work," which "would have prevented the street depression from turning into the street collapse." *Ibid.*

The seventh cause of action alleges that the City's "actions and omissions were the direct and proximate cause of the damage" to Con Edison. *Id.* ¶ 146. It does not allege that the City is jointly or severally liable with the other defendants, but it does allege in passing that the City is "directly or vicariously liable" for Con Edison's injuries. *Id.* ¶ 148. On the seventh cause of action, Con Edison again seeks a judgment of "at least $4.8 million." *Id.* at 32.

Con Edison's complaint explains that the monetary judgment it is seeking on each count— one to seven—is for "the costs and expenses incurred by Con Edison in responding to the emergency collapse of Northern Boulevard, the cost of repair or replacement of the gas and electric facilities damaged by the collapse, and the consequent loss of Con Edison's gas caused by the collapse." *Id.* ¶¶ 74, 81, 97, 109, 120, 135, 148.

In sum: "Con Edison seeks compensatory damages for property damage . . . , caused by: (a) [non-City] actions in connection with excavation . . . , and (b) the City['s] . . . actions in connection with NYC's: (i) inspection and monitoring of this excavation . . . (ii) installation, maintenance, operation, and repair of NYC's streets, sidewalks, curbs, water, sewer, and fire hydrant services, and (iii) failure to warn of hazards . . . after having notice of the problem." *Id.* ¶ 1.

### 3. The Insurance Policy and Demand

Fleet had issued a commercial general liability insurance policy to Perini covering the period of the Northern Boulevard collapse. *See* Joint Statement ¶ 8. Under the policy, Fleet agreed to "pay those sums that the insured becomes legally obligated to pay as damages because of 'bodily injury' or 'property damage' to which this insurance applies." Commercial General Liability Policy at 1 (Dkt. #20-3). Fleet also acknowledged that it had "the right and duty to defend the insured against any 'suit' seeking those damages." *Ibid.*

An endorsement included the City as "an additional insured on [Perini's] general liability policy." Commercial General Liability Policy, Endorsement #23 (Dkt. #20-3); Project Specific

General Liability Insurance Summary at 1 (Dkt. #20-4). The endorsement specified that the additional insured would be covered "only with respect to liability for 'bodily injury', 'property damage' or 'personal and advertising injury' caused, in whole or in part, by [Perini's] acts or omissions or the acts of omissions of those acting on [Perini's] behalf in the performance of [Perini's] ongoing operations or in connection with property owned by [Perini]." Commercial Liability Policy, Endorsement #23; *cf.* Rules of the City of New York, tit. 1, § 101-08 (requiring certain holders of permits for construction work to "provide that the [C]ity . . . is an [a]dditional [i]nsured with coverage at least as broad as set forth in the most recent edition of ISO Form[] . . . CG 2026"); NYC, Insurance Requirements and Sample Documents, ISO Form CG 2026 (requiring coverage of additional insured under the circumstances set out in Fleet's endorsement).

When the City received the *Con Edison* action, the City sent a copy of the summons and complaint to Fleet alongside a "demand[] [for] defense coverage as soon as possible." September 16, 2019 Cwiecek Letter (Dkt. #20-5). Fleet "den[ied] any obligation to defend . . . the City." Joint Statement ¶ 11; *see* October 14, 2019 Bisgaier Letter (Dkt. #20-6). Since then, the City has defended itself. *See* Joint Statement ¶ 12.

### B. Procedural History

In November 2019, the City filed this action against Fleet in the Eastern District of New York. *See* Compl. at 10 (Dkt. #1). The first cause of action alleges that Fleet's failure to defend the City in the *Con Edison* action breached Fleet's duty to defend under Perini's insurance policy. *Id.* ¶¶ 30-32. The second cause of action alleges that Fleet is liable for the City's defense costs in the *Con Edison* action. *Id.* ¶¶ 34-38. The complaint requests a declaration that Fleet is obligated to defend the City in the *Con Edison* action and an order directing Fleet to pay the attorneys' fees and expenses incurred by the City defending that action. *See* Compl. at 10.

Both parties have moved for summary judgment. *See* Pl.'s Notice of Mot. (Dkt. #16); Def.'s Notice of Mot. (Dkt. #18). The City renews its request for "a declaration that defendant Fleet . . . is required to defend the City" in the *Con Edison* action and an order "to reimburse the City for its attorneys' fees and costs expended in defending that action." Pl.'s Notice of Mot. at 1. Fleet requests an order "dismissing the complaint . . . with prejudice." Def.'s Notice of Mot. at 1.

## STANDARD OF REVIEW

Summary judgment is appropriate when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "An issue of fact is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Frost v. New York City Police Dep't*, 980 F.3d 231, 242 (2d Cir. 2020) (quoting *SCR Joint Venture L.P. v. Warshawsky*, 559 F.3d 133, 137 (2d Cir. 2009)). "A fact is material if it might affect the outcome of the suit under the governing law." *Ibid.* In assessing the record, I view "the evidence in the light most favorable to the nonmoving party and draw all reasonable inferences in that party's favor." *Tracy v. Freshwater*, 623 F.3d 90, 95 (2d Cir. 2010).

"The same standard applies where, as here, the parties filed cross-motions for summary judgment." *Morales v. Quintel Ent., Inc.*, 249 F.3d 115, 121 (2d Cir. 2001). "[E]ach party's motion must be examined on its own merits, and in each case all reasonable inferences must be drawn against the party whose motion is under consideration." *Ibid.*

## DISCUSSION

### I.   **Legal Framework**

The parties agree that New York law governs whether Fleet had a duty to defend the City in the *Con Edison* action. *See* Pl.'s Mem. of L. in Support of Mot. for Summ. J. at 11 (Dkt. #17) ("City Memo"); Def.'s Mem. of L. in Support of Mot. for Summ. J. at 7 (Dkt. #19) ("Fleet Memo"). In New York, "the standard for determining whether an additional named insured is entitled to a

defense is the same standard that is used to determine if a named insured is entitled to a defense." *BP Air Conditioning Corp. v. One Beacon Ins. Grp.*, 871 N.E.2d 1128, 1132 (N.Y. 2007). "An insurer must defend whenever the four corners of the complaint suggest—or the insurer has actual knowledge of facts establishing—a reasonable possibility of coverage." *Maryland Cas. Co. v. Cont'l Cas. Co.*, 332 F.3d 145, 160 (2d Cir. 2003) (quoting *Cont'l Cas. Co. v. Rapid-Am. Corp.*, 609 N.E.2d 506, 509 (N.Y. 1993)).

This duty is "exceedingly broad." *Euchner-USA, Inc. v. Hartford Cas. Ins. Co.*, 754 F.3d 136, 140 (2d Cir. 2014) (quoting *Auto. Ins. Co. of Hartford v. Cook*, 850 N.E.2d 1152, 1155 (N.Y. 2006)). An insurer may refuse only if "there is no possible factual or legal basis" for eventual indemnity "under any provision of the insurance policy." *High Point Design, LLC v. LM Ins. Corp.*, 911 F.3d 89, 95 (2d Cir. 2018) (quoting *Servidone Constr. Corp v. Sec. Ins. Co. of Hartford*, 477 N.E.2d 441, 444 (N.Y. 1985)). "If any of the claims against the insured arguably arise from covered events, the insurer is required to defend the entire action." *Ibid.* (quoting *Frontier Insulation Contractors, Inc. v. Merchs. Mut. Ins. Co.*, 690 N.E.2d 866, 869 (N.Y. 1997)).

The duty to defend is "ordinarily ascertained by comparing the allegations of the complaint with the wording of the insurance contract." *Int'l Bus. Machines Corp. v. Liberty Mut. Ins. Co.*, 363 F.3d 137, 144 (2d Cir. 2004) (citing *Ruder & Finn Inc. v. Seaboard Sur. Co.*, 422 N.E.2d 518, 521 (N.Y. 1981)). In interpreting an insurance agreement, a court applies "principles of contract interpretation." *Burlington Ins. Co. v. NYC Transit Auth.*, 79 N.E.3d 477, 481 (N.Y. 2017). Any "unambiguous provisions of an insurance contract must be given their plain and ordinary meaning." *Vigilant Ins. Co. v. Bear Stearns Cos., Inc.*, 884 N.E.2d 1044, 1047 (N.Y. 2008). Beyond this, "a contract must be construed in a manner which gives effect to each and every part." *Nomura Home Equity Loan, Inc., Series 2006-FM2, by HSBC Bank USA, Nat'l Ass'n v. Nomura*

*Credit & Cap., Inc.*, 92 N.E.3d 743, 747 (N.Y. 2017). "[A]mbiguities in insurance contracts are construed in favor of the insured." *Hugo Boss Fashions, Inc. v. Fed. Ins. Co.*, 252 F.3d 608, 615 (2d Cir. 2001) (citing *Handelsman v. Sea Ins. Co.*, 647 N.E.2d 1258, 1260 (N.Y. 1994)).

Moreover, in assessing the duty to defend, the allegations in the underlying complaint must be "liberally construed." *Euchner-USA*, 754 F.3d at 141 (quoting *Auto. Ins. Co. of Hartford*, 850 N.E.2d at 1155). Ultimately, "[a]ny doubt as to whether the allegations state a claim within the coverage of the policy must be resolved in favor of the insured and against the carrier." *Ibid.* (quoting *Brook Shopping Ctr. v. Liberty Mut. Ins. Co.*, 80 A.D. 2d 292, 294 (N.Y. App. Div. 1981)).

## II.     Analysis

Applying these principles, Fleet has a duty to defend the City in the *Con Edison* action, because there is at least a reasonable possibility that Fleet will be required to indemnify the City in that case. Fleet's policy is best read to indemnify the City from all claims for property damage proximately caused by Perini's acts or omissions. That includes the City's liability for property damage caused in part by its own actions, so long as that damage was also proximately caused by Perini's acts or omissions. There is at least a reasonable probability here that the *Con Edison* complaint will lead to liability within the scope of that coverage.

Even if Fleet's policy were narrower, Fleet would still have a duty to defend. Fleet acknowledges its duty to defend if the City and Perini could be held jointly and severally liable. And there is a reasonable possibility of such liability in the *Con Edison* case.

### A.     Fleet must defend the City in the *Con Edison* case because Con Edison seeks to hold the City liable for property damage proximately caused by Perini.

Fleet must defend the City because Con Edison's complaint seeks to hold the City liable for damage proximately caused by Perini's acts or omissions. Fleet can be understood to argue

that its endorsement only covers an additional insured's vicarious liability, meaning liability for the named insured's torts, *see* Dan B. Dobbs, The Law of Torts § 425 (2d. ed), and never covers an additional insured's direct liability, meaning liability from an additional insured's own conduct, *see* Restatement (Third) of Agency § 7.03 cmt. b (2006). *See* Fleet Memo at 7. But text, precedent, and history all establish that the endorsement covers an additional insured's direct liability for damage proximately caused by the named insured's acts or omissions.

### 1. Fleet's policy covers the City's liability for property damage proximately caused by Perini's acts or omissions.

Applying principles of contract interpretation to Fleet's endorsement, *see Burlington Ins. Co.*, 79 N.E.3d at 481, the endorsement covers the City as an additional insured for any claims of property damage proximately caused by actions of Perini. The endorsement states that an additional insured is covered "with respect to liability for . . . 'property damage' . . . caused, in whole or in part, by [Perini's] acts or omissions." Commercial General Liability Policy, Endorsement #23. The phrase "caused, in whole or in part" in this context "describes proximate causation." *Burlington Ins. Co.*, 79 N.E.3d at 481. "'[P]roximate cause,'" in turn, "refers to a 'legal cause' to which the Court has assigned liability." *Id.* at 482 (citation omitted).

The phrase "caused, in whole or in part, by [Perini's] acts or omissions" most naturally modifies "property damage." A limiting phrase ordinarily modifies "[t]he last antecedent"—that is, "only the noun or phrase that it immediately follows." *Barnhart v. Thomas*, 540 U.S. 20, 26 (2003). This "rule of grammar" applies to contract disputes. *GPIF-I Equity Co., Ltd. v. HDG Mansur Inv. Servs., Inc.*, 2013 WL 3989041, at *8 (S.D.N.Y. Aug. 1, 2013); *see, e.g.*, *Lloyd v. J.P. Morgan Chase & Co.*, 791 F.3d 265, 271 (2d Cir. 2015). Indeed, "the New York Court of Appeals has specifically relied on the principles underlying the rule of the last antecedent in resolving an insurance contract dispute." *GPIF-I Equity Co.*, 2013 WL 3989041 at *8 (citing *Maurice Goldman*

& *Sons, Inc. v. Hanover, Ins. Co.*, 607 N.E.2d 792 (N.Y. 1992)).  Taking these words together, Fleet's endorsement encompasses liability for property damage with only one limitation: acts or omissions of Perini must have been a proximate cause of the damage.  That includes the City's direct liability for damages proximately caused by Perini's acts or omissions.

The surrounding language bolsters this understanding, because it specifies that an additional insured is covered "with respect to liability for . . . 'property damage' . . . caused, in whole *or in part*," by Perini, Commercial General Liability Policy, Endorsement #23 (emphasis added).  It thus expressly acknowledges that the endorsement applies when parties other than the named insured—like an additional insured—are also tortfeasors.  *See First Mercury Ins. Co. v. Shawmut Woodworking & Supply, Inc.*, 660 F. App'x 30, 34 (2d Cir. 2016) (summary order) (reasoning that the "in whole or in part" language "clearly contemplates that the additional insureds might also be tortfeasors"); *Pro Con, Inc. v. Interstate Fire & Cas. Co.*, 794 F. Supp. 2d 242, 256-57 (D. Me. 2011) ("Defendant, by including the language 'in whole or in part' in its [policy], specifically intended coverage for additional insureds to extend to occurrences attributable in part to acts or omissions by both the named insured and the additional insured.").  At minimum, that is a reasonable reading of the endorsement, and such ambiguity in an insurance contract is resolved in the insured's favor.  *Euchner-USA*, 754 F.3d at 141.

The New York Court of Appeals' decision in *Burlington Insurance Co.* confirms that Fleet's policy covers the City for property damage proximately caused, in whole or in part, by Perini's acts or omissions.  The Court of Appeals construed a policy with the same relevant language—covering an additional insured "only with respect to liability for 'bodily injury', 'property damage' or 'personal and advertising injury' caused, in whole or in part, by . . . [the named insured's] acts or omissions."  79 N.E.3d. at 479.  It squarely held that "where an insurance

policy is restricted to liability for any bodily injury 'caused, in whole or in part,' by the 'acts or omissions' of the named insured, the coverage applies to injury proximately caused by the named insured." *Id.* at 478; *see also, e.g.*, *id.* at 481 ("[B]y its terms, the policy endorsement is limited to those injuries proximately caused by [the named insured.").

The endorsement's history reinforces the same understanding. The language of this endorsement comes from a form issued by a trade group known as the Insurance Services Office ("ISO"). *See* City Memo at 5; Rules of the City of New York, tit. 1, § 101-08 (requiring prospective permit holders to make the City "an [a]dditional [i]nsured with coverage at least as broad as set forth in the most recent edition" of relevant forms promulgated by the ISO). Before 2004, the ISO's form for coverage of an additional insured applied to injuries "arising out of" the named insured's actions. *Burlington Ins. Co.*, 79 N.E.3d at 485. Under that regime, courts regularly concluded that the endorsement covered an additional insured's direct liability for harms proximately caused by the conduct of the named insured—not simply an additional insured's vicarious liability for the additional insured's actions. *See, e.g.*, *Charter Oak Fire Ins. Co. v. Trustees of Columbia Univ. in City of New York*, 198 A.D.2d 134, 135 (N.Y. App. Div. 1993). But some courts further ruled that the endorsement covered an additional insured's direct liability for "damage arising from the additional insured's sole negligence." *Burlington Ins. Co.*, 79 N.E.3d at 485; *see, e.g.*, *Ins. Co. of N. Am. v. Liberty Mut. Ins. Co.*, No. 94-CV-637, 1994 WL 150818, at *2 (S.D.N.Y. Apr. 19, 1994). They concluded that a named insured need not be a proximate cause of the damage, so long as the named insured's acts or omissions were a "but for" cause. *Burlington Ins. Co.*, 79 N.E.3d at 485. In apparent response, the ISO amended its forms in 2004 "to replace the language 'arising out of' with 'caused, in whole or in part.'" *Ibid.* This amendment simply "preclu[ded] . . . coverage for an additional insured's sole negligence" by replacing but-for

13

causation with "proximate causation." *Ibid.*; *see First Mercury Ins. Co. v. Shawmut Woodworking & Supply, Inc.*, 48 F. Supp. 3d 158, 174 (D. Conn. 2014) (explaining that "[t]he amendment was intended to require proximate causation by the insured rather than simply but-for causation").

Accordingly, as many courts in New York have already concluded, this language requires an insurer to defend an additional insured when the complaint alleges that actions of the named insured were a proximate cause of the damages being sought. Those courts assess the insurer's duty to defend based solely on whether the underlying complaint alleges that the additional insured is liable for an injury that was proximately caused by the named insured. *See First Mercury Ins. Co. v. Preferred Contractors Ins. Co.*, 136 N.Y.S.3d 728, 728 (N.Y. App. Div. 2021) ("At this stage, the pleadings are sufficient to allege . . . that [the insurer's] named insured proximately caused the underlying accident, and thus that under the policy language, there is a reasonable possibility of coverage that could trigger at least a duty to defend."); *Citizens Ins. Co. of Am. v. Am. Ins. Co.*, 130 N.Y.S.3d 289, 290 (N.Y. App. Div. 2020) ("Since the underlying personal injury complaint here contains allegations that all defendants, including [the additional insured], are liable for bodily injuries, and that all defendants, including [the named insured], were a proximate cause of those injuries, [the insurer's] duty to defend is triggered."); *see also Vargas v. City of New York*, 158 A.D.3d 523, 525 (N.Y. App. Div. 2018); *see also Starr Indem. & Liab. Co. v. Excelsior Ins. Co.*, No. 19-CV-3747, --- F. Supp. 3d ----, 2021 WL 326209, at *8 (S.D.N.Y. Feb. 1, 2021).

## 2. Fleet's narrower construction lacks merit.

Fleet offers a narrower construction of its endorsement, contending that it only applies when the additional insured could "be liable for the negligent acts of" the named insured. Def.'s Opp'n to Def.'s Cross-Mot. for Summ. J. at 1 (Dkt. #25) ("Fleet Opp'n"); *see id.* at 6 ("Because the Con Edison complaint does not assert that the City is . . . liable for Perini's conduct, Fleet has no duty to defend the City."); Fleet Memo at 9 ("[T]he City is not being sued for the negligence of

Perini."). So construed, the City would only be indemnified if it were vicariously liable for Perini's negligence or were jointly and severally liable with Perini. *See* Def.'s Reply in Supp. of Cross-Mot. for Summ. J. at 3 (Dkt. #30) ("Fleet Reply").

Fleet's construction does not persuade. While Fleet acknowledges that the touchstone of an insurance dispute is the language of the contract, *see, e.g.*, Fleet Memo at 7, Fleet does not attempt to ground its interpretation in the policy's text. Instead, Fleet appears to rest on the New York Court of Appeals' opinion in *Burlington*, suggesting that the decision established that Fleet's policy covers the City only if "the City is vicariously liable for Perini's conduct" or if "Perini and the City are jointly and severally liable for Con Edison's damages." Fleet Reply at 3. But *Burlington* did not adopt those limits. To the contrary, *Burlington* repeatedly explained that it was adopting a proximate-causation test. *See* pp. 12-13, *supra*; 79 N.E.3d at 478 ("[C]overage applies to injury proximately caused by the named insured."); *id.* at 483 ("'[C]aused in whole or in part,' as used in the endorsement, requires the insured to be the proximate cause of the injury giving rise to liability."); *ibid.* ("Giving the words chosen by the parties their plain and ordinary meaning, the endorsement describes proximate cause.").

The portions of the opinion on which Fleet relies does not adopt a contrary rule. Fleet seizes on a sentence where the Court of Appeals explained that the endorsement was designed to "provide coverage for an additional insured's vicarious or contributory negligence, and to prevent coverage for the additional insured's sole negligence." 79 N.E.3d at 485; *see, e.g.*, Fleet Opp'n at 3. But the Court of Appeals' statement regarding "sole negligence" does not help Fleet; it simply confirms that acts or omissions of a named insured must be a proximate cause of the injury for the endorsement to apply. Further, the Court of Appeals' reference to "an additional insured's . . . contributory negligence" strongly suggests that the Court of Appeals understood the endorsement

would reach cases in which an injury results from the negligence of both a named insured and an additional insured. While "contributory negligence" is commonly used to refer to the "negligence of the *plaintiff* . . . [as] one of the causes of her harm," Dan B. Dobbs, The Law of Torts § 219 (2d ed.) (emphasis added), the Court of Appeals' reference to "an *additional insured's* . . . contributory negligence" suggests the parallel concept of negligence on the part of an additional insured as a contributing cause. Accordingly, this section of *Burlington* simply reinforces that Fleet's endorsement applies when acts of both the additional insured and the named insured were proximate causes of an injury. To the extent uncertainty remains about how *Burlington* is best understood, Fleet has a duty to defend the City on the possibility that "the cases governing the insurance policy [will] be read to impose coverage." *Hugo Boss Fashions*, 252 F.3d at 620.

My conclusion that Fleet's endorsement is not limited to an additional insured's vicarious or joint and several liability is also consistent with the conclusions of courts across the country. *See, e.g.*, *Scottsdale Ins. Co. v. United Rentals (N. Am.), Inc.*, 977 F.3d 69, 73 (1st Cir. 2020) ("[The insurer] has a duty to indemnify [the additional insured] . . . for both direct and vicarious liability."); *FirstEnergy Generation, LLC v. Valley Forge Ins. Co.*, No. 19-CV-2413, 2020 WL 5544359, at *5 (N.D. Ohio Sept. 16, 2020) ("[T]he Court construes the policy . . . to cover any of [the additional insured's] potential liability in the underlying suits caused in whole or in part by [the named insured], even if that liability is not vicarious liability resulting from [the named insured]'s actions."); *Moore v. Home Depot USA, Inc.*, 352 F. Supp. 3d 640, 648 (M.D. La 2018) ("Nothing in the text of the blanket additional-insured endorsement limits coverage to [the additional insured]'s vicarious liability for [the named insured's] fault."); *First Mercury*, 48 F. Supp. 3d at 174 ("[C]overage . . . is not limited to . . . vicarious liability . . . but instead refers more broadly to liability that is caused, at least in part, by [the named insured], but excludes situations

involving only the independent acts of negligence of the additional insureds."). Fleet's endorsement reaches the City's direct liability for property damage when that damage was proximately caused, at least in part, by acts or omissions of Perini.

### 3. The Con Edison complaint alleges that the City is liable for property damage that was proximately caused by Perini.

The *Con Edison* complaint alleges claims within the scope of Fleet's endorsement. Con Edison seeks "compensatory damages for property damage" from the City. *See Con Edison* Compl. at 1. Specifically, it seeks about $4.8 million, representing the amount of money spent to repair damaged gas and electric facilities and restore those power systems. *See id.* at 32. And while the complaint alleges that the City was a proximate cause of that damage, it also identifies Perini as another proximate cause of that same harm. The introduction to the complaint states that the property damage was also "caused by . . . [non-City] actions in connection with excavation." *Id.* ¶ 1. And the third, fourth, and fifth causes of action expressly allege that the non-City defendants' "actions and omissions [were] the proximate cause" of the $4.8 million in property damage. *Id.* ¶¶ 91, 108, 115. These are not mere conclusory allegations; the complaint describes how Perini and others "engaged in a pattern and practice of violating the New York City Building Code, accumulating a plethora of violations, monetary penalties, and stop work orders," which led to "shifting ground and/or damage to neighboring structures." *Id.* ¶¶ 39-40. Because the complaint alleges the Perini's actions—as well as the City's—were proximate causes of the property damage for which Con Edison seeks to recover, Fleet owes the City a duty to defend. *See High Point Design, LLC*, 911 F.3d at 95 (noting that an insured has a duty to defend a lawsuit when "any of the claims against the insured arguably arise from covered events"); *cf. Vargas*, 158 A.D.3d at 525 (concluding that complaint adequately alleged proximate causation by named insured when it

"allege[d] that all defendants were negligent and failed to provide a safe job site," so it was "possible that plaintiff's injury was caused by [the named insured]").

Fleet's contrary arguments lack merit. First, Fleet argues that the complaint does not allege that Perini was a proximate cause of the property damage for which Con Edison seeks damages from the City because the seventh cause of action states that "NYC's actions and omissions were the direct and proximate cause of the damage to Con Edison's gas and electric facilities and the loss of Con Edison's gas." *Con Edison* Compl. ¶ 147; *see* Fleet Memo at 5. But since "there may be more than one proximate cause of an injury," "the proximate cause" can mean "a proximate cause." *Argentina v. Emery World Wide Delivery Corp.*, 715 N.E.2d 495, 498 n.2 (N.Y. 1999); *see Burlington Ins. Co.*, 79 N.E.3d at 482 ("[T]here may be more than one proximate cause"). That reading is best here, where the complaint alleges that both Perini and the City were "the proximate cause" of Con Edison's injuries, *Con Edison* Compl. ¶¶ 91, 108, 115, 147, and describes these injuries in identical terms, *id.* ¶¶ 1, 97, 109, 120, 153.

Second, Fleet argues that there is no reasonable possibility that the City will be held liable for property damage proximately caused by Perini because "Con Edison has advanced [the] two theories of causation on an 'either/or' basis: the accident was either caused by Perini and the other Construction Defendants' negligence, *or* it was caused by the City's separate and independent negligence." Fleet Opp'n at 5. But the complaint's allegations are not mutually exclusive. A factfinder accepting the allegations in the complaint could determine that negligence of both the Construction Defendants and the City combined to cause the damage to Con Edison's property. To the extent that the allegations are "ambiguous" on the point, Fleet is obligated to defend the City due to the possibility that the complaint alleges that both were a proximate cause. *U.S. Fid. & Guar. Co. v. Executive Ins. Co.*, 893 F.2d 517, 519 (2d Cir. 1990). Because the *Con Edison*

complaint seeks to hold the City liable for property damage proximately caused by Perini, Fleet is obligated to defend the City in the *Con Edison* action.

### B. Even under a narrower construction of Fleet's policy, Fleet has a duty to defend the City because Con Edison's allegations qualify for joint and several liability.

Even if Fleet's policy had the narrower scope that Fleet suggests, Fleet would have a duty to defend the City in the *Con Edison* action. Fleet concedes that its endorsement at least covers the City's joint and several liability with Perini, *see* Fleet's Reply at 3, presumably because joint and several liability would make the City "responsible . . . for the shares [of damage] attributable" to Perini, *see* David D. Siegel, N.Y. Prac. § 168A (6th ed.); Dan B. Dobbs, Law of Torts § 488 (2d ed.) ("When two or more tortfeasors are jointly and severally liable, each defendant is subject to liability for all of the plaintiff's damages.").

The "reasonable possibility" of eventual joint and several liability independently obligates Fleet to defend the City in the *Con Edison* action. *Maryland Cas. Co.*, 332 F.3d at 160. While *Con Edison* complaint does not explicitly state that it seeks to hold the City and Perini jointly and severally liable, the complaint raises a reasonable possibility of such liability. Under New York law, "[w]hen two or more tort-feasors act concurrently or in concert to produce a single injury, they may be held jointly and severally liable." *Ravo by Ravo v. Rogatnick*, 514 N.E.2d 1104, 1106 (N.Y. 1987); *see* Elizabeth Williams, 103 N.Y. Jur. 2d Torts § 33 (2d ed.) (same). As previously explained, the complaint alleges that both the City and Perini took actions concurrently that ultimately produced Con Edison's property damage. Those allegations are enough to create the reasonable possibility that the City and Perini might be held jointly liable.

The fact that the *Con Edison* complaint does not explicitly raise the City's joint and several liability does not change the outcome. The duty to defend applies in "poorly or incompletely pleaded cases as well as those artfully drafted," *U.S. Fid. & Guar. Co*, 893 F.2d at 519 (quoting

*Ruder & Finn, Inc. v. Seaboard Sur. Co.*, 422 N.E.2d 518, 521 (N.Y. 1981)), and an insurer cannot "construct a formal fortress of [a] third party's pleadings" by requiring magic words, *see Fitzpatrick v. Am. Honda Co.*, 575 N.E.2d 90, 93-94 (N.Y. 1991). What matters is the possibility of coverage, and the reasonable possibility remains that the City and Perini would be held jointly liable were they found to be joint tortfeasors. *See* David D. Siegel, N.Y. Prac. § 168A (6th ed.) ("The general rule in New York tort law is still that of joint and several liability."); N.Y. C.P.L.R. § 3017 ("[T]he court may grant any type of relief within its jurisdiction appropriate to the proof whether or not demanded, imposed on such terms as may be just.").

### C. Because Fleet has a duty to defend the City, Fleet also has a duty to pay attorneys' fees and litigation expenses that the City reasonably incurred.

"Where an insurer breaches the duty to defend, it must pay damages in the form of attorneys' fees and litigation expenses reasonably incurred by the insured in defending the underlying action." *United Parcel Serv. v. Lexington Ins. Grp.*, 983 F. Supp. 2d 258, 267-68 (S.D.N.Y. 2013). Fleet has a duty to defend the City in the *Con Edison* action. Accordingly, Fleet also has a duty to compensate the City for the fees and expenses reasonably incurred defending that action. *See Lowy v. Travelers Prop. & Cas. Co.*, 2000 WL 526702, at *2 n.1 (S.D.N.Y. May, 2, 2000); *Port Auth. of New York & New Jersey v. Brickman Grp. Ltd., LLC*, 181 A.D.3d 1, 19-20 (N.Y. App. Div. 2019).

## CONCLUSION

The City's motion for summary judgment is granted, and Fleet's motion for summary judgment is denied. A conference is scheduled for May 19, 2021 to discuss further proceedings in this case, including proceedings concerning the amount of the City's litigation expenses.

SO ORDERED.

 /s/  Rachel Kovner
RACHEL P. KOVNER
United States District Judge

Dated: May 12, 2021
Brooklyn, New York