UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------x
CITY OF NEW YORK,

                Plaintiff,

       v.                           **MEMORANDUM AND ORDER**
                                      19-CV-6629 (RPK) (ST)

FLEET GENERAL INSURANCE GROUP, INC.,

                Defendant.
------------------------------------------------------------x

RACHEL P. KOVNER, United States District Judge:

      The City of New York moves for sanctions against non-party Richard Xia and attorneys Marc L. Mukasey and Kenneth A. Caruso pursuant to Federal Rule of Procedure 11, 28 U.S.C. § 1927, and the Court's inherent powers. For the reasons explained below, the motion is denied.

## BACKGROUND

      In January 2019, an 825-square-foot section of road and sidewalk collapsed in Queens, causing damage to property owned by non-party Consolidated Edison Corporation of New York ("ConEd"). May 12, 2021 Mem. & Order ("2021 Mem. & Order") 4 (Dkt. #44). Alleging that an adjacent construction project contributed to the collapse, ConEd sued five entities connected to the project: Fleet Financial Group, Inc.; the Perini Group, Inc.; the Racanelli Construction Group, Inc.; the Eastern Emerald Group LLC; and the Grand Eastern Mirage Group, LLC. *Ibid.*; *see* Compl., *Consol. Edison Co. of N.Y., Inc. v. E. Emerald Grp. LLC*, No. 715229/2019 (N.Y. Sup. Ct. filed Sept. 5, 2019) (Dkt. #20-1). ConEd also sued the City, alleging, *inter alia*, that the City negligently supervised the site. 2021 Mem. & Order 4–5. In turn, the City demanded that defendant Fleet General Insurance Group, Inc. ("Fleet"), the project's insurer, cover its litigation costs. *Id.* at 6–7. When Fleet refused to indemnify the City, the City initiated the present suit, invoking this Court's diversity jurisdiction on the basis that the City is a citizen of New York, while Fleet is a

citizen of Vermont.  *See* Compl. ¶¶ 7–8 (Dkt. #1).

At summary judgment, the City prevailed.  The Court granted the City's motion for summary judgment and denied Fleet's cross-motion on March 31, 2021, *see* Mar. 31, 2021 Text Order, and explained its decision in a Memorandum and Order issued on May 12, 2021, *see* 2021 Mem. & Order.  The Court's written opinion explained that, in addition to its duty to defend the City, Fleet also had a duty to reimburse the City for any expenses it incurred defending the underlying ConEd state action.  2021 Mem. & Order 20.  The opinion scheduled a conference "to discuss further proceedings in th[e] case, including proceedings concerning the amount of the City's litigation expenses."  *Id.* at 21.  Fleet filed appeals from both the Court's March 31 and May 12 orders, *see* Apr. 29, 2021 Notice of Appeal (Dkt. #41); May 27, 2021 Notice of Appeal (Dkt. #51), which the Second Circuit consolidated and then dismissed because no final order had been issued pursuant to 28 U.S.C. § 1291, *see* Sept. 14, 2021 Mandate (Dkts. #66, 67).

The parties began proceedings to determine the City's litigation expenses.  *See* 2021 Mem. & Order; June 16, 2021 Status Report (Dkt. #54).  On June 16, 2021, the parties filed a joint status letter, in which Fleet requested the opportunity to brief five distinct issues, some of which pertained to the damages calculation (*e.g.*, the adequacy of the City's billing records), and some of which related to other issues (*e.g.*, whether the City had a right to appoint its own defense counsel to defend the City in the action against it by ConEd).  *See* June 16, 2021 Status Report.  Fleet also raised new arguments disputing its duty to defend.  *See ibid.*

Less than a month later, on July 12, 2021, Fleet changed course and argued for the first time that the Court lacked subject-matter jurisdiction over the case.  *See* July 12, 2021 Ltr. Mot. (Dkt. #58).  This suit was filed under 28 U.S.C. § 1332, the federal diversity-jurisdiction statute, on the theory that Fleet was a citizen of Vermont, and Vermont alone.  Compl. ¶¶ 7–8.  For over a

year and a half, Fleet appeared to agree.  In its answer, amended answer, and Rule 56.1 statement, Fleet admitted that it was incorporated and maintained its principal place of business in Vermont.  *See* Joint Local Rule 56.1 Statement ¶ 2 (Dkt. #20); Answer ¶ 7 (Dkt. #8); Am. Answer ¶ 7 (Dkt. #9).  In its Civil Appeal Pre-Argument Statement submitted to the Second Circuit as part of its two appeals, Fleet checked the box labeled "Diversity" as the basis for federal jurisdiction.  Decl. of Eric Proshansky, Ex. E 1 (Dkt. #80-5); *id.* Ex. F 1 (Dkt. #80-6).  Only after its defeat at summary judgment did Fleet assert that its principal place of business was in fact in Queens, making it a citizen of New York and destroying diversity.  *See* July 12, 2021 Ltr. Mot.

Following Fleet's revelation, the Court ordered jurisdictional discovery.  Aug. 9, 2021 Order.  After discovery, Fleet filed a Federal Rule of Civil Procedure 12(b)(1) motion to dismiss, *see* Mot. to Dismiss (Dkt. #77), and submitted an affidavit from its president and treasurer, Richard Xia, *see* Decl. of Richard Xia ("Xia Decl.") (Dkt. #78).  The declaration asserted that Fleet's "only operational office" is located in Queens; that Xia and another individual, Yu Ren, are Fleet's only officers; that Xia and Ren work out of the Queens office; and that Xia personally prepared the only insurance policy Fleet ever issued—the one in dispute in this case.  Xia Decl. ¶¶ 5–7.  Fleet also submitted several pieces of evidence tending to show that Fleet's principal place of business was located in New York.  *See* Xia Decl., Exs. B–F (Dkt. #78-2 to 78-6).

The Court granted Fleet's motion to dismiss for lack of subject-matter jurisdiction, vacating its prior orders.  *See* Sept. 30, 2022 Mem. & Order ("2022 Mem. & Order") (Dkt. #86).  The Court reasoned that the location of a corporation's "principal place of business" was a mixed question of fact and law.  *Id.* at 8.  As a result, Fleet's statements in its answer, amended answer, and Rule 56.1 statement that its "principal place of business" was in Vermont constituted "a legal conclusion unaccompanied by either the facts or law the parties used to reach it."  *Id.* at 9.  Because Fleet's

3

filings did not contain enough underlying facts for the Court to verify its legal conclusion that it maintained its principal place of business in Vermont, those admissions were not binding on the question of Fleet's citizenship, and thus not dispositive of the jurisdictional issue. *Id.* at 8–9. The Court then found that, in light of Fleet and Xia's evidentiary submissions, the City had failed to meet its burden to establish that Fleet's principal place of business was in Vermont rather than New York. *Id.* at 9–13. Diversity jurisdiction was therefore missing. *Id.* at 13.

In the memorandum and order dismissing the case, the Court stated that it would retain jurisdiction over a motion by the City "for sanctions in connection with Fleet's litigating this case through summary judgment, while representing that the parties were diverse." *Ibid.* The City then filed the present motion for sanctions under Federal Rule of Procedure 11, 28 U.S.C. § 1927, and the Court's inherent powers against Richard Xia and attorneys Michael C. Lynch, Marc L. Mukasey, and Kenneth A. Caruso. *See* Mem. of L. in Supp. of Mot. for Sanctions ("Sanctions Mot.") (Dkt. #88-4). The City sought sanctions against all parties for their roles in Fleet's representations to the Court regarding its citizenship, and also sought sanctions against attorneys Mukasey and Caruso only for frivolously filing two appeals from the Court's non-final summary judgment orders. *See id.* at 1–2. Following responses from all parties, the City then withdrew its motion for sanctions against Lynch only. *See* Jan. 13, 2023 Ltr. Mot. (Dkt. #116).

The City also appealed the Court's dismissal order to the Second Circuit. *See* Oct. 31, 2022 Notice of Appeal (Dkt. #89). While the sanctions motion was pending, the Second Circuit reversed this Court's dismissal and remanded for further proceedings. Aug. 14, 2024 Mandate (Dkt. #127). That court reasoned that the concept of a "principal place of business" had an ordinary, factual meaning, and that Fleet's repeated assertions that its principal place of business was located in Vermont constituted judicial admissions of fact binding on Fleet for purposes of

this case.  *See id.* at 4–6.

## LEGAL STANDARD

### A.      Sanctions under Rule 11

Federal Rule of Civil Procedure 11 provides:

> By presenting to the court a pleading, written motion, or other paper—whether by signing, filing, submitting, or later advocating it—an attorney or unrepresented party certifies that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances: . . .
>
> (2) the claims, defenses, and other legal contentions are warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law;
>
> (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery.

Fed. R. Civ. P. 11(b).  "[A]fter notice and a reasonable opportunity to respond," a district court may impose sanctions "on any attorney, law firm, or party that violated the rule or is responsible for the violation."  Fed. R. Civ. P. 11(c)(1); *see United States v. Int'l Bhd. of Teamsters*, 948 F.2d 1338, 1343 (2d Cir. 1991) ("Rule 11 provides a vehicle for sanctioning an attorney, a client, or both."); 5A Charles Alan Wright & Arthur Miller, *Federal Practice & Procedure* § 1336.2 (4th ed. June 2024) ("[T]he district court's discretion under Federal Rule of Civil Procedure 11(c) includes the power to impose sanctions on the client alone, solely on the counsel for one of the parties, a law firm, or on any combination of the three." (footnotes omitted)).

Ordinarily, Rule 11 sanctions proceedings are initiated by opposing counsel.  *Muhammad v. Walmart Stores E., L.P.*, 732 F.3d 104, 108 (2d Cir. 2013).  "In those situations opposing counsel must serve a notice of the sanctions claim on the accused attorney 21 days before moving for sanctions to give an opportunity to correct the asserted misconduct."  *Ibid.*; *see* Fed. R. Civ. P. 11(c)(2).  "The mental state applicable to liability for Rule 11 sanctions initiated by motion is

objective unreasonableness." *In re Pennie & Edmonds LLP*, 323 F.3d 86, 90 (2d Cir. 2003).  But Rule 11 also permits the court to initiate sanctions proceedings *sua sponte* without providing opportunity to withdraw the contested pleading.  *See* Fed. R. Civ. P. 11(c)(3).  If initiated *sua sponte*, the court may impose sanctions "only upon a finding of subjective bad faith."  *Muhammad*, 732 F.3d at 108.

### B.     Sanctions Under 28 U.S.C. § 1927

Section 1927 provides that an attorney who "multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct."  28 U.S.C. § 1927.  Unlike Rule 11, Section 1927 targets an attorney's "course of conduct" during the litigation and "do[es] not hinge on the presence of a paper" signed by the attorney.  *Int'l Bhd. of Teamsters*, 948 F.2d at 1346.  "The purpose of this statute is to deter unnecessary delays in litigation."  *Id.* at 1345 (quotation marks and citation omitted).

"[A]n award made under § 1927 must be supported by a finding of bad faith."  *Oliveri v. Thompson*, 803 F.2d 1265, 1273 (2d Cir. 1986).  Actions are taken in "bad faith" when they are "motivated by improper purposes such as harassment or delay."  *Eisemann v. Greene*, 204 F.3d 393, 396 (2d Cir. 2000) (citation omitted).  Courts ordinarily find bad faith when an attorney knows that his or her actions are taken without factual or legal basis.  *See Dakus v. Koninklijke Luchtvaart Maatschappij, N.V.*, No. 22-CV-7962 (RA), 2024 WL 4265646, at *4, *6 (S.D.N.Y. Sept. 23, 2024) (collecting cases).  Bad faith may also be inferred if an attorney's "actions are so completely without merit as to require the conclusion that they must have been undertaken for some improper purpose."  *Enmon v. Prospect Cap. Corp.*, 675 F.3d 138, 143 (2d Cir. 2012) (citation omitted).

### C.     Inherent-Power Sanctions

Federal courts possess inherent power to sanction conduct that "abuses the judicial

process." *Goodyear Tire & Rubber Co. v. Haeger*, 581 U.S. 101, 107 (2017) (citation omitted). The inherent power to sanction stems from "the control necessarily vested in courts to manage their own affairs so as to achieve the orderly and expeditious disposition of cases." *Chambers v. NASCO, Inc.*, 501 U.S. 32, 43 (1991) (citation omitted).  Exercising its inherent powers, "a court may assess attorney's fees" against a party when it "has acted in bad faith, vexatiously, wantonly, or for oppressive reasons." *Id.* at 45–46 (quotation marks and citation omitted).  "In order to impose sanctions pursuant to its inherent power, a district court must find that: (1) the challenged claim was without a colorable basis and (2) the claim was brought in bad faith, *i.e.*, motivated by improper purposes such as harassment or delay." *Enmon*, 675 F.3d at 143 (citation omitted).  Bad faith must be proved by "clear and convincing evidence." *Yukos Cap. S.A.R.L. v. Feldman*, 977 F.3d 216, 235 (2d Cir. 2020).  The Second Circuit has remarked that "the only meaningful difference between" sanctions under Section 1927 and under a court's inherent powers is that awards under Section 1927 may only be made against attorneys, while sanctions under a court's inherent power "may be made against an attorney, a party, or both." *Oliveri*, 803 F.2d at 1273; *accord Enmon*, 675 F.3d at 144.

## DISCUSSION

The City has not made the onerous showings needed for sanctions under the provisions that it invokes.

### I.    Rule 11 Sanctions

In this case's current procedural posture, the Court cannot grant the City's requested Rule 11 sanctions against any party.  Rule 11 sanction proceedings may be initiated either on motion by an opposing party or on the Court's own initiative.  *See* Fed. R. Civ. P. 11(c)(2)–(3).  If on an opposing party's motion, the party to be sanctioned must be afforded a 21-day safe harbor period during which he or she may withdraw the offending filing.  Fed. R. Civ. P. 11(c)(2); *see*

*Muhammad*, 732 F.3d at 108.  And if on the court's own initiative, the court must first "enter an order describing the *specific conduct* that appears to violate the rule and directing the attorney to show cause why it has not violated the rule with respect thereto."  *Nuwesra v. Merrill Lynch, Fenner & Smith, Inc.*, 174 F.3d 87, 92 (2d Cir. 1999) (emphasis original) (brackets, ellipsis, and citation omitted).

The Court first raised the prospect of sanctions in its order granting Fleet's motion to dismiss for lack of subject-matter jurisdiction.  In that September 30, 2022 order, the Court stated, "Should the City move for sanctions in connection with Fleet's litigating this case through summary judgment, while representing that the parties were diverse, the Court will retain jurisdiction over that motion."  2022 Mem. & Order 13.  The City's motion for sanctions then followed thirty days later.  *See* Sanctions Mot.  Mukasey and Caruso argue that Rule 11 sanctions are inappropriate because they were not given an opportunity by the City to first withdraw any allegedly violating filings as required by Rule 11(c)(2).  *See* Mukasey & Caruso Mem. of L. in Opp'n to Pl.'s Mot. for Sanctions 10–12 (Dkt. #113).  The City responds by arguing that the Court's September 30, 2022 order qualifies as the court *sua sponte* initiating sanctions proceedings under Rule 11(c)(3).  *See* Reply in Supp. of Pl.'s Mot. for Sanctions ("Sanctions Reply") 16–18 (Dkt. #117).

The City's motion does not satisfy the requirements for a sanctions motion initiated by the opposing party because the City's opponents were not first afforded an opportunity to withdraw any offending filings, as required by the rule's safe-harbor provision.

Nor does the Court's order qualify as a *sua sponte* initiation of Rule 11 proceedings under Rule 11(c)(3).  True, the Court's order does clearly convey its view that Fleet and its attorneys had potentially engaged in sanctionable conduct.  *See* 2022 Mem. & Order 13 ("Fleet's litigating this

case through summary judgment, while representing that the parties were diverse").  Doubtless the current sanctions proceedings come as no surprise to Xia, Mukasey, and Caruso.  But the order did not of its own accord direct Fleet, its attorneys, or Xia to "show cause" why they should not be sanctioned.  Fed. R. Civ. P. 11(c)(3); *see Nuwesra*, 174 F.3d at 92.  Instead, it gave the City leave to file a motion for sanctions.  With the Second Circuit's admonition that the safe-harbor provision in Rule 11 is "a strict procedural requirement," *Star Mark Mgmt., Inc. v. Koon Chun Hing Keey Soy & Sauce Factory, Ltd.*, 682 F.3d 170, 175 (2d Cir. 2012), in mind, the Court's September 30, 2022 order did not suffice to begin the sanctions process on its own.  To illustrate, if the City had *not* moved, there would be no sanctions proceedings.  *Cf. Photocircuits Corp. v. Marathon Agents, Inc.*, 162 F.R.D. 449, 452 (E.D.N.Y. 1995) (district court granting leave to defendants to "move for sanctions 'if they desire to do so'" did not circumvent the safe-harbor provision).

The City's motion for sanctions under Rule 11 against Xia, Mukasey, and Caruso is denied.

## II.   The City's Motion for Sanctions Against Mukasey and Caruso

The City seeks sanctions under both 28 U.S.C. § 1927 and the Court's inherent powers against attorneys Mukasey and Caruso for their alleged "multiple misrepresentations of Fleet's citizenship" as well as for "knowingly appealing non-final orders."  Sanctions Mot. 13, 16, 19. The motion is denied.

### A.   Fleet's Citizenship

The City argues that Mukasey and Caruso failed to conduct a reasonable investigation into Fleet's principal place of business in violation, leading Fleet to "advance[] a frivolous legal position" when it represented that diversity of citizenship existed while litigating the case through summary judgment.  *See* Sanctions Mot. 14.  The City argues that this conduct multiplied proceedings "unreasonably and vexatiously" and is sanctionable under both Section 1297 and the Court's inherent powers.  *See id.* at 16–19, 23–25.  Because Mukasey and Caruso's conduct in this

case with respect to the issue of Fleet's citizenship does not amount to bad faith, sanctions are unwarranted.

Mukasey, Caruso, and their firm, Mukasey Frenchman LLP, were retained to represent Fleet midway through this action. *See* Decl. of Marc L. Mukasey ("Mukasey Decl.") ¶ 12 (Dkt. #113-1); Decl. of Kenneth A. Caruso ("Caruso Decl.") ¶ 17 (Dkt. #113-4). At the time of Mukasey Frenchman's engagement, Fleet's original counsel, Michael Lynch and the law firm Kelley Drye & Warren LLP, had already filed Fleet's answer and amended answer. Both filings represented that Fleet's principal place of business was located in Vermont. Answer ¶ 7; Am. Answer ¶ 7. After Mukasey Frenchman was retained, both Mukasey and Caruso reviewed Fleet's summary judgment papers but, believing the issue of diversity jurisdiction to be settled, did not second-guess the assertion in the joint Rule 56.1 statement—signed by attorney Lynch only on behalf of Fleet— that diversity of citizenship existed between Fleet and the City. Mukasey Decl. ¶¶ 14–15; Caruso Decl. ¶¶ 19–21. Following the summary judgment motions, attorneys Mukasey and Caruso "reviewed documents and participated in discussions and conferences regarding, among other things, discovery, experts, and the possibility of mediation and settlement." Mukasey Decl. ¶ 16; *accord* Caruso Decl. ¶ 22. According to Mukasey, none of this activity revealed anything to suggest that Fleet's representations regarding its citizenship were inaccurate. Mukasey Decl. ¶ 16.

Caruso replaced Lynch as lead counsel in this case in April 2021, after the Court had entered a text-only order granting summary judgment to the City but before it issued its written opinion. Caruso Decl. ¶ 24. Caruso signed both notices of appeal from the Court's summary judgment orders. *See* Apr. 29, 2021 Notice of Appeal; May 27, 2021 Notice of Appeal. In both appeals, he also signed the Civil Appeal Pre-Argument Statements which represented "Diversity" as the basis for federal jurisdiction. Decl. of Eric Proshansky, Ex. E 1; *id.* Ex. F 1.

On June 10, 2021, after the Court issued its written summary judgment opinion, the City's counsel emailed Caruso asking for "a copy of [Fleet's] license from the State Dept of Financial Services to do insurance business in New York." Caruso Decl. Ex. B 1 (Dkt. #113-6). To respond to this request, Caruso spoke with Bret McCabe, general counsel to Fleet Financial Group, on June 30, 2021. Caruso Decl. ¶ 34. The next day, McCabe emailed Caruso stating that "Richard [Xia] is the sole employee/officer of Fleet. The insurance company was incorporated in Vermont with authorization to conduct business in NY and its office and only operations have been in the State of New York." Sur-Reply Decl. of Kenneth A. Caruso ("Caruso Sur-Reply Decl.") ¶ 2 (Dkt. #121-1). Per Caruso, this email alerted him "for the first time" that Fleet's prior representation that its principal place of business was located in Vermont may have been incorrect. *Id.* ¶ 3. Caruso then conducted additional legal and factual research, drafted a request for a pre-motion conference, and informed Mukasey about the potential jurisdictional issue. Caruso Decl. ¶ 35; Mukasey Decl. ¶ 20. The parties then filed their pre-motion letter on July 12, informing the Court for the first time of the potentially diversity-destroying information. *See* July 12, 2021 Ltr. Mot.

This sequence of events does not demonstrate bad faith on the part of Mukasey or Caruso. After joining the case, Mukasey and Caruso aver that they "assumed that Kelley Drye, with its capable and respected lawyers, properly and sufficiently investigated the case, including jurisdiction." Mukasey Decl. ¶ 14; *see* Caruso Decl. ¶¶ 20–21. They reviewed the motion for summary judgment, and—in Caruso's case—signed additional papers certifying the existence of diversity jurisdiction. Mukasey Decl. ¶ 15; *see* Caruso Decl. ¶¶ 21, 31. True, at least in the Rule 11 context, "attorneys may not entirely delegate to anyone, including co-counsel, their duty to inquire into the facts of a case." *Miller v. Wolpoff & Abramson, L.L.P.*, 471 F. Supp. 2d 243, 251 (E.D.N.Y. 2007) (emphasis omitted) (citing cases). And the citizenship of Fleet, a corporation

with a single office, should not have been a particularly difficult fact to confirm.  Here, it apparently took a single phone call with the client, followed by a three-sentence email, for Caruso to learn that Fleet was likely a citizen of New York.  Caruso Decl. ¶ 34; Caruso Sur-Reply Decl. ¶¶ 2–3.

But to support sanctions under either Section 1927 or a court's inherent powers, Mukasey and Caruso must have exhibited subjective bad faith.  *Enmon*, 675 F.3d at 143.  Mukasey and Caruso's reliance on the jurisdictional investigation conducted by attorney Lynch before they joined the case does not meet this standard.  In contrast to other cases supporting sanctions under Section 1927 or a court's inherent powers, no party suggests that Mukasey or Caruso knew at any point prior to June 30, 2021 that Fleet was a citizen of New York.  And upon learning of the potentially diversity-destroying information from their client, Mukasey and Caruso promptly informed the Court in the form of a request for a pre-motion conference in advance of a motion to dismiss.  The City has not presented clear and convincing evidence that Mukasey and Caruso were motivated by bad faith.

The City's motion for sanctions against Mukasey and Caruso under both Section 1927 and the Court's inherent power with respect to their actions taken with respect to Fleet's citizenship is therefore denied.

## B. Premature Appeals

Next, the City argues that Mukasey and Caruso knowingly appealed from two non-final orders—the Court's two orders granting summary judgment to the City—which "vexatiously multiplied proceedings in that the City was forced to file two briefs seeking to dismiss the appeals." Sanctions Mot. 19.  Because these notices of appeal were not taken in bad faith, sanctions are again unwarranted.

The federal courts of appeals have jurisdiction under 28 U.S.C. § 1291 only over a district court's "final decisions." Generally speaking, an aggrieved party has thirty days from entry of a final decision during which to take an appeal. *See* 28 U.S.C. § 2107(a); Fed. R. App. P. 4(a)(1)(A). This period is jurisdictional in civil cases. *Perez v. AC Roosevelt Food Corp.*, 744 F.3d 39, 41 (2d Cir. 2013). Accordingly, determining when an order constitutes a final judgment is important for preserving a party's appellate rights. Sometimes, that can be difficult. *See Amara v. Cigna Corp.*, 53 F.4th 241, 249 (2d Cir. 2022) ("Often, determining whether a district court's order is final is simple enough. . . . But not always."). Because the Court's two orders granting summary judgment to the City left open the amount of damages the City was owed in the form of fees it had incurred defending the underlying ConEd action, they were not final within the meaning of the final judgment rule. *See* Sept. 14, 2021 Mandate.

The Court does not find that the appeals were taken in bad faith. Contrary to the City's assertion that the appeals were taken as a "delay tactic," Sanctions Reply 20, neither appeal appears to have been designed to delay the district court proceedings. Mukasey, on behalf of Fleet, filed a letter on the same day the first notice of appeal was filed explaining that Fleet took the appeal "in an abundance of caution" and that it would consent to proceedings continuing in the district court. Apr. 29, 2021 Ltr. (Dkt. #42). And in a status conference held on May 19, 2021, counsel for both Fleet and the City explained that the parties had agreed that litigation in the district court regarding the City's entitlement to and amount of fees incurred in defending the underlying ConEd action could continue notwithstanding the appeals. Caruso Decl. Ex. A 4:9–7:12 (Dkt. #113-5).

The Second Circuit has "expressed a preference that district courts not sanction parties for filing frivolous appeals in this Court." *Enmon*, 675 F.3d at 146. Setting aside whether or not Fleet's appeals were, in fact, frivolous, there is no evidence that Mukasey and Caruso were

"motivated by improper purposes such as harassment or delay," *Eisemann*, 204 F.3d at 396 (citation omitted), rather than by a merely mistaken understanding of the rules of appellate jurisdiction.  Accordingly, the Court does not find Mukasey and Caruso to have acted in bad faith.

The City's motion for sanctions against Mukasey and Caruso under both Section 1927 and the Court's inherent power with respect to the two premature appeals is denied.

## III.   The City's Motion for Sanctions Against Xia

The City moves for sanctions under the Court's inherent powers against Xia for "his multiple misrepresentations of Fleet's citizenship."  Sanctions Mot. 9.  The motion is denied.

Xia is the president and treasurer of Fleet, which he founded as a captive-insurance subsidiary of its parent real-estate development and asset-management company, Fleet Financial Group, of which he is also the founder and president.  Xia Decl. ¶¶ 1, 5.B.  He also sits on Fleet's board of directors.  *Id.* ¶ 5.A.  As Fleet put it during this litigation, Xia is Fleet's "brain"—he "directed, controlled, and coordinated the corporation's activities."  Mem. of L. in Supp. of Mot. to Dismiss 7 (Dkt. #79).

At the outset of this litigation, Xia approved the filing of Fleet's answer and amended answer, both of which represented that Fleet's "principal place of business" was located at "One Mill Street, Chace Mill, Suite 324, Burlington, VT, 05401."  *See* Compl. ¶ 7; Answer ¶ 7; Am. Answer ¶ 7.  Lynch, Fleet's original counsel in this action, attests that he prepared these filings "in consultation with Richard Xia . . . and Bret McCabe, who was the General Counsel of Fleet Financial."  Decl. of Michael C. Lynch ¶ 6 (Dkt. #107-1).  Specifically, Lynch and other attorneys from his firm "participated in multiple conference calls with Fleet's representatives"—Xia and McCabe—"to discuss the Complaint's factual allegations and legal theories and Fleet's responses thereto."  *Id.* ¶¶ 7–8.  Xia and McCabe "confirmed to [Lynch] the accuracy of the City's factual allegation" that Fleet's principal place of business was located in Vermont.  *Id.* ¶ 9.

14

Later, after the Court had granted summary judgment to the City, Xia submitted an affidavit to the Court in support of Fleet's motion to dismiss.  In it, he represented that "Fleet Insurance had its office -- its only operational office -- at the Flushing Office [in Queens, New York], which it shared with Fleet Financial."  Xia Decl. ¶ 5.C.  He included several pieces of evidence supporting this contention, including a photo of a nameplate in the Flushing Office containing both the names of Fleet and Fleet Financial, Fleet stationery bearing the address of the Flushing Office, Xia's business cards identifying him as Fleet's president bearing the address of the Flushing Office, and a statement from Fleet's bank account listing the as its address the Flushing Office.  Xia Decl., Exs. B–F.  And he represented that, in its entire existence, Fleet had issued only one insurance policy—the one at issue in this litigation—which he personally prepared and signed while working out of the Flushing Office.  Xia Decl. ¶¶ 6–7.  Partially on the basis of this evidence, the Court granted Fleet's motion to dismiss for lack of subject-matter jurisdiction.  *See* 2022 Mem. & Order.

After the City then moved for sanctions, Xia attempted to explain his actions.  In an affidavit submitted in support of his opposition to the City's sanctions motion, Xia asserted that, as a non-lawyer, he "was unaware of the unique legal test for where a corporation's principal place of business is for purposes of subject-matter jurisdiction."  Decl. of Richard Xia ¶¶ 4, 8 (Dkt. #109).  At the outset of the action, he believed that Fleet's principal place of business was located in Vermont because that is where its "official principal office is located" and where its address is listed for other purposes, including regulatory filings to the state of Vermont and its tax returns.  *Id.* ¶ 9.  It was only after Mukasey and Caruso filed Fleet's motion to dismiss for lack of subject-matter jurisdiction that Xia learned that "the relevant question for jurisdictional purposes apparently is where Fleet's high-level decisions are made."  *Id.* ¶ 8.

The City has not established by clear and convincing evidence that Xia behaved in bad faith. The City's principal argument is that, as Fleet's president, Xia must be presumed to "kn[o]w the location of his principal place of business as a matter of law." Sanctions Mot. 10. Because Xia was in possession of all the facts he later deployed to defeat the Court's subject-matter jurisdiction, the City argues that Xia's initial representation that Fleet's principal place of business was located in Vermont necessarily must have been knowingly false. *See id.* at 10–11. The City also suggests that Xia may have been motivated by a desire to delay the current action thanks to an inability to fund the coverage this Court had deemed it owed the City. *See id.* at 1, 3; Sanctions Reply 7–9. Finally, the City attacks Xia's credibility as a general matter by pointing to evidence that Xia has offered contradictory and false testimony in other litigation involving him and his businesses. *See* Sanctions Mot. 12.

The Court is not convinced. The phrase "principal place of business" as used in the diversity jurisdiction analysis is not self-defining. *See Hertz Corp. v. Friend*, 559 U.S. 77, 89–92 (2010) (documenting confusion among commentators and the lower courts about how to apply the "principal place of business" test). Xia's explanation that he believed a corporation's "principal place of business" to be its "official" address where it is legally registered for regulatory and tax purposes, rather than the location where the corporation's high-level decisions were functionally made, Xia Mem. of L. in Opp'n to Pl.'s Mot. for Sanctions ("Xia Resp.") 13 (Dkt. #108), is a plausible mistake for a non-lawyer to make—especially one justifiably relying on the legal acumen of his retained counsel. *Cf. Banus v. Citigroup Global Mkts., Inc.*, 757 F. Supp. 2d 394, 402–03 (S.D.N.Y. 2010) (granting sanctions against an attorney but denying them against a client where no evidence "support[ed] a finding that the plaintiffs, as lay persons, were primarily responsible for the [legal] strategy and resulting arguments"). The City offers no support for its argument that

any corporate officer should know simply by virtue of their position that the phrase, "principal place of business," invokes a corporation's "actual center of direction, control, and coordination," *Hertz Corp.*, 559 U.S. at 93, rather than its formal, legal address.  Therefore, the Court finds that Xia's endorsement of Fleet's principal place of business being in Vermont rather than New York was, though inconsistent with his later factual representations, not "so completely without merit as to require the conclusion that [it] must have been undertaken for some improper purpose." *Enmon*, 675 F.3d at 143 (citation omitted).

The City's supposition that Xia was motivated to delay the current case by his financial inability to fund the City's defense is speculative.  By comparing the timeline of Xia's mounting financial difficulties with his representations regarding diversity jurisdiction in this case, the City argues that this Court may assume Xia purposefully misrepresented Fleet's citizenship, then strategically revealed the diversity-destroying information, in order to delay the ultimate resolution of the coverage issue.  But mere speculation that Xia might have been motivated by a bad-faith purpose is insufficient to support sanctions, which require clear and convincing evidence that such motives actually did underlie Xia's actions. *Yukos Cap. S.A.R.L.*, 977 F.3d at 235; *see also Dow Chem. Pac. Ltd. v. Rascator Maritime S.A.*, 782 F.2d 329, 344 (2d Cir. 1986) (requiring "a high degree of specificity in the factual findings of the lower courts" to support inherent-power sanctions (brackets and citation omitted)).  The same goes for the City's attacks on Xia's credibility by reference to other matters.  Absent reason to believe that he has knowingly made misrepresentations to the Court here, it would be inappropriate to simply assume that Xia must also be lying now.

The City's motion for sanctions against Xia is denied.

17

## IV.    Xia's Cross-Motion for Sanctions Against the City

In his opposition brief, Xia brings a cross-motion for sanctions against the City for their assertedly frivolous sanctions motion.  Xia Resp. 17–18.  Xia's cross-motion is denied.

The purported legal errors Xia identifies in the City's motion are either not errors at all or are a product of his own misunderstanding.  For example, though Xia argues that Rule 11 sanctions may not be imposed on a represented client who does not sign any papers submitted to the court, Xia Resp. 6–7, the text of the Rule and the case law are both clear that Rule 11 sanctions may be imposed against "any attorney, law firm, or party that violated the rule *or is responsible for the violation*"—including clients.   Fed. R. Civ. P. 11(c)(1) (emphasis added); *see Int'l Bhd. of Teamsters*, 948 F.2d at 1343 ("Rule 11 provides a vehicle for sanctioning an attorney, a client, or both.").  Similarly, Xia's argument that this Court's summary judgment order "need not have been vacated" after dismissing the action for lack of subject-matter jurisdiction, Xia Resp. 9, flies in the face of black-letter law holding that orders entered without subject-matter jurisdiction are void, which Fleet's own memorandum of law earlier in this action urging dismissal and vacatur recognized, *see* Mem. of L. in Supp. of Mot. to Dismiss 8 ("For the reasons set forth above, the Court lacks subject-matter jurisdiction over this action.  Accordingly, the Court must dismiss the action, and must vacate its prior orders in this action as void for lack of jurisdiction." (brackets, quotation marks, and citation omitted)).  And Xia's argument that Section 1927 sanctions may not be levied against non-attorneys, Xia Resp. 7, 9, is misplaced, given that the City never moved to sanction Xia under Section 1927, *see* Sanctions Mot. 2 ("The City accordingly seeks sanctions against Xia and his counsel pursuant to Rule 11 of the Federal Rules of Civil Procedure; against Xia and his counsel pursuant to the Court's inherent powers; and against Xia's counsel pursuant to 28 U.S.C. § [1927].").

Finally, Xia's contention that the City had no factual basis for its sanctions motion fails. *See* Xia Resp. 17–18.  Fleet's varying representations regarding its citizenship have frustrated the orderly disposition of this case and required expenditures of resources from both this Court and the Second Circuit that would not have occurred if Xia, Fleet, and their attorneys had engaged in a more diligent inquiry into subject-matter jurisdiction at the outset of the case.  And the timing of Fleet's belated invocation of New York citizenship, coming shortly after the Court issued an adverse summary judgment ruling, at least suggested the potential for bad faith.  Though the Court ultimately does not grant the City's motion, it certainly was not frivolous.  Xia's cross-motion for sanctions is denied.

## CONCLUSION

For the reasons set forth above, the City's motion for sanctions against Richard Xia, Marc L. Mukasey, and Kenneth A. Caruso is denied.  Counsel for defendant Fleet is directed to forward a copy of this order to Xia.

SO ORDERED.

*/s/ Rachel Kovner*
RACHEL P. KOVNER
United States District Judge

Dated:  September 30, 2024
        Brooklyn, New York

19